## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

AUMANN AUCTIONS, INC.,        )
                              )
        Plaintiff,            )
                              )
    v.                        )        Case No. 17-cv-3156
                              )
CONRAD FLETCHER,              )
                              )
        Defendant.            )

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendant Conrad Fletcher's

Motion for Summary Judgment (d/e 53) (Motion).  For the reasons set forth

below, the Motion is ALLOWED in part and DENIED in part.  The Court

finds pursuant to Federal Rule of Civil Procedure 56(g) that the evidence

submitted establishes that the parties did not enter into a contract at the

March 30, 2017 meeting discussed in detail below.  The Motion is

otherwise DENIED.

## STATEMENT OF FACTS

In October 2016, Fletcher lived in Golden, Colorado with his girlfriend

Eva Morrison.  Fletcher was over 80 years old at the time.  Fletcher and

Morrison lived in a single-family house with two large outbuildings on the

property, a two-story barn and a D-shaped building (Outbuildings)

(collectively the Residence).  Fletcher was retired and owned a large collection of antique cars, tractors, and other memorabilia (Collection).  He stored much of the Collection in the Outbuildings.  Fletcher testified that he did not own all the items in the Collection.  Morrison owned some of the memorabilia and a limited liability company called F&M Ventures, LLC (F&M), owned some.  Fletcher and Morrison owned all of the membership interests in F&M.  <u>See</u> Motion, Exhibit 1, <u>Deposition of Conrad Fletcher (Fletcher Deposition)</u>, at 8,10-12,38

In October 2016, Fletcher and Morrison decided to move to Arizona. Fletcher had difficulty breathing in the cold weather in Colorado due to health problems.  Sometime between October 2016 and January 2017, Fletcher contacted a man named Bob Sullivan to help sell some of his personal property before he moved.  Sullivan came to the Residence to photograph some of the automobiles and memorabilia in the Collection in order to advertise the items for sale.  Sullivan testified that Fletcher wanted Sullivan to sell all of the Collection.  Fletcher said he only wanted Sullivan to sell some of the antique automobiles.  Fletcher set the selling prices for the automobiles for Sullivan.  Fletcher did not give Sullivan authority to sign agreements to finalize any sale.  Sullivan advertised several of the automobiles for sale.  Sullivan's efforts resulted in the sale of a Hudson

Coupe, a 1912 Buick, and possibly a 1914 Renault automobile.  The

Hudson automobile was owned by Morrison.  See Fletcher Deposition, at

14-17, 20-22, 36; Motion, Exhibit 3, Deposition of Bob Sullivan (Sullivan

Deposition), at 7, 14-15, 16, 65.

On January 12, 2017, Morrison died.  Her estate transferred her

interest in F&M to Fletcher in exchange for title to a 1994 Buick Le Sabre

automobile.  Fletcher Deposition, at 14; Plaintiff's Response to Defendant's

Motion for Summary Judgment (d/e 62) (Response), Exhibit C, Defendant

Discovery Production, Document 10, Assignment of Membership Interest

and Statement of Dissociation dated October 3, 2017.  In addition, the

proceeds from the sale of the Hudson automobile went to her children.

See Fletcher Deposition, at 14-17, 20-22, 36.

In January 2017, Fletcher talked to Sullivan about auctioning much of

Fletcher's personal property, including many items in the Collection.

Sullivan agreed to assist Fletcher in contacting auctioneers.  Sullivan

recommended Kurt Aumann to Fletcher.   Aumann owned Plaintiff Aumann

Auctions, Inc. (the Company), located in Nokomis, Illinois.  The Company

was a family business and Aumann had worked in the business 58 years.

He had run the Company for 15 years and had experience conducting over

100 antique automobile auctions.   See Fletcher Deposition, at 23, 28;

Sullivan Deposition, at 30-31; Motion, Exhibit 4, Deposition of Kurt Aumann (Aumann Deposition), at 4-5, 12-22.

In January 2017, Sullivan contacted Aumann and a second auction company.  Sullivan arranged for Aumann and also a representative from the other auction company to visit the Residence.  See Fletcher Deposition, at 23, 28; Sullivan Deposition, at 30-31; Motion, Exhibit 4, Deposition of Kurt Aumann (Aumann Deposition), at 12-22.

On March 30, 2017, Aumann came to the Residence.  Sullivan and Fletcher's son-in-law Al Haner were also present. Fletcher testified that he told Aumann he wanted to sell all his personal property, including household items.  Fletcher testified that Aumann was not interested in selling Fletcher's household items.  See Fletcher Deposition, at 20, 26-27, 29-30, 31; Aumann Deposition, at 26-29, 159-60; see also, Sullivan Deposition, at 19-20, 36-38.

Aumann was interested in looking at the Collection for a possible auction.  Some of the automobiles in the Collection were in Arizona already.  Fletcher testified that he told Aumann that he was not interested in selling any of the automobiles that were in Arizona.  Aumann disputed this.  See Fletcher Deposition, at 59-61; Aumann Deposition, at 45-47; see also Sullivan Deposition, at 13.

Aumann, Sullivan, and Haner went to the Outbuildings to view the Collection.  Fletcher did not accompany Aumann on this viewing because of health problems.  Aumann testified that he conducted a walkthrough of the Outbuildings, taking pictures of certain items, and taking notes.  The notes identified approximately 70 items and included brief comments and descriptions of some of the items (List).  During the walkthrough, Sullivan may have told Aumann that some automobiles were already sold.  Aumann was not sure whether Sullivan or Fletcher told him that some of the automobiles were sold.  Aumann did not inspect any item to determine whether it was operational.  Aumann expected that a crew from the Company would return to Fletcher's residence at a later date to catalogue all of the items to be sold at auction.  See Sullivan Deposition, at 38-40; Aumann Deposition, at 28-71, 131-32; Plaintiff's Rule 26(a) Initial Disclosures (d/e 19) (Plaintiff's Initial Disclosures), Exhibit E, List.[1]

Aumann testified that after the walkthrough, he sat down with Fletcher for two hours discussing the items on the List.  Aumann said that Fletcher identified certain items that had already been sold or were not for sale. Aumann Deposition, at 72-78, 162-65.  Fletcher and Sullivan both

---

[1] Plaintiff's Initial Disclosures were stricken because Local Rule 26.3(A) directs the parties not to file initial disclosures.  Text Order entered November 2, 2018.  The Court refers to certain documents in the stricken Plaintiff's Initial Disclosures, including the List, because the referenced documents do not appear anywhere else in the parties' filings in this case.

testified that they have no recollection of any such discussion and did not think that such a discussion occurred.  Fletcher testified, "I don't think they spent much time there at the kitchen table after that, I think they got in the car and left for the airport, I think."  Fletcher recognized some marks on the List were his handwriting.  Fletcher, however, testified that he did not see the List at the March 30, 2017 meeting, but sometime later.  Fletcher Deposition, at 33-34, 40-44.  Sullivan testified that he did not recall any conversation after Aumann viewed the Collection on March 30, 2017.  Sullivan said he never saw the List. Sullivan Deposition, at 40-41.

Aumann testified that at the end of the meeting Fletcher and Sullivan said, "they wanted to think about it, and that they would be in touch with me." Aumann Deposition, at 74; see Sullivan Deposition, at 42.  Aumann also knew that Sullivan and Fletcher were talking to at least one other auctioneer.  Aumann Deposition, at 166.  Upon returning home, Aumann prepared a typed version of the List.  Defendant Discovery Production, Document 26, Typed Version of List; Aumann Deposition, at 32.

Shortly after the March 30, 2017 meeting, Sullivan telephoned Aumann to tell him that Fletcher wanted to hire the Company to conduct the auction.  Sullivan and Aumann talked about dates for the auction.  Sullivan wanted the auction before the Hershey Swap Meet that occurred

on the first weekend in October 2017.  Sullivan Deposition, at 43, 46.

Sullivan said he discussed and confirmed a September date with both

Aumann and Fletcher.  See Sullivan Deposition, at 49.  Fletcher disputes

this.  Fletcher said he wanted the sale in June.  He said the sale in

September was too late in the year to avoid the chance of winter weather.

See Fletcher Deposition, at 18, 21-22, 44.

On April 3, 2017, Aumann sent an email to Sullivan attaching a

document entitled "Online Auction Contract Aumann Auctions, Inc." (Online

Auction Contract).  Motion, Exhibits 5 and 6, Online Auction Contract.

Aumann also sent the Online Auction Contract to Fletcher by overnight

express.  Aumann Deposition, at 85. Aumann signed the Online Auction

Contract before he sent it to Fletcher.  Motion Exhibit 5, Online Auction

Contract only signed by Aumann.  Aumann stated in the email to Sullivan,

"I looked at dates and I'm leaning toward September 15[th] & 16th and 22[nd] &

23rd.  We can discuss the ins and out of those two dates when we visit."

Plaintiff's Initial Disclosures, Email from Aumann to Sullivan dated April 3,

2017.  Sullivan received the email but did not look at the attachment and

did not forward the email to Fletcher.  Sullivan Deposition, at 47, 63.

The Online Auction Contract sent to Fletcher listed the auction date

as "September ___ 2017," without a specific day in September identified.

The Online Auction Contract also stated, "This agreement . . . grants to AUMANN AUCTIONS, INC. the exclusive right to market and sell at PUBLIC AUCTION the following described personal property: Antique Automobile, Sign and Parts Collection."  The Online Auction Contract did not contain any other description of the items to be auctioned.  The Online Auction Contract also did not include an integration clause stating that the Online Auction Contract was the entire agreement between the parties, or otherwise state that the Online Auction Contract was the entire agreement between the parties.

Aumann testified that he believed the items to be sold were, "The things that he directed me to when we met."  Aumann Deposition, at 109. See Aumann Deposition, at 109-16, 168.  Aumann later stated in his affidavit that he and Fletcher decided what property to sell at auction at the March 30, 2017 meeting.   Response, Exhibit A, Affidavit of Kurt Aumann (Aumann Affidavit) ¶ 8.  Fletcher said that he and Aumann did not discuss items on the List or anything else after Aumann viewed the Collection in the outbuildings.  According to Fletcher, Aumann essentially got in his car and left.  Fletcher Deposition, at 33-34, 40-44.  Sullivan substantially agreed with Fletcher.  See Sullivan Deposition, at 40-41.

Aumann testified that after sending the Online Auction Contract, he and Fletcher had one or more telephone conversations.  Fletcher testified that he told Aumann that he had sold the Residence.  Aumann said that Fletcher was concerned about the date of the auction because he had to be out of the Residence by October 1, 2017.  Aumann said that Fletcher also was concerned about selling one of his Pierce Arrow automobiles without a minimum bid price.  Aumann Deposition, at 85-90.

Fletcher denied that he ever spoke to Aumann after the March 30, 2017 meeting.  Fletcher said that he tried to call Aumann several times but never succeeded in speaking to Aumann.  Fletcher wanted to tell Aumann that he wanted the sale in June, not September 2017.  Fletcher said he told a person named Jody who answered Aumann's phone that he wanted the sale in June 2017.  A Company employee Jody Reynolds agrees she talked to Fletcher over the phone but denies that Fletcher ever requested or suggested that he wanted the sale in June 2017.  Fletcher Deposition, at 21, 48, 64; Response, Exhibit B, Affidavit of Jody Reynolds ¶ 5.

On April 24, 2017, Aumann wrote Fletcher a letter.  Aumann told Fletcher that he was going to Germany and the Netherlands the next day. He stated, in part,

> I know from our conversation last week, you feel a lot of
> pressure and apprehension about the auction.  That seem to

center around selling the Pierce Arrow absolute.  I would be
willing to talk about a reserve on that car with your if that would
make you more comfortable."

A handwritten note on the bottom of the copy of the letter produced by

Fletcher in discovery states, "Talked to Jodi."  <u>Defendant Discovery</u>

<u>Production</u>, Document 23, <u>April 24, 2017 Letter</u>; <u>see</u> <u>Fletcher Deposition</u>, at

18, 20-22; <u>Aumann Deposition</u>, at 126-30.

About a month after the March 30, 2017 meeting, Fletcher signed the

Online Auction Contract.  Fletcher testified that he did not fill in the date on

the Online Auction Contract so that that date portion still read "September

___ 2017."  Fletcher testified that he mailed the signed document back to

Aumann with a note that stated that he wanted the auction to occur in June

2017.  Aumann testified that when he received Fletcher's response in the

mail, the blank line was filled in with "15 & 16" so that the date portion of

the Online Auction Contract read "September 15 & 16 2017."  Aumann did

not know who wrote the "15 &16" on the signed Online Auction Contract.

<u>See</u> <u>Fletcher Deposition</u>, at 18, 20-22, 51-52, 55; <u>Aumann Deposition</u>, at

85-89; <u>Motion</u>, Exhibit 6, <u>Online Auction Contract signed by both Fletcher</u>

<u>and Aumann</u>.

Aumann's Response to the Motion asserts that "AUMANN opened

the envelope containing the contract signed by FLETCHER and there was

no note stating the auction should occur in June." <u>Response</u>, at 4 ¶ 2.g.

Aumann cites Exhibit A to the Response, the Aumann Affidavit, as the

supporting evidence for this assertion.  The Aumann Affidavit does not say

that Aumann opened the envelope with the signed Online Auction Contract

and does not say anything about whether there was a note in the envelope

with it.  The evidence before the Court, therefore, does not indicate who

opened the Fletcher's correspondence to the Company that contained the

signed Online Auction Contract or whether that person found a note from

Fletcher stating that he wanted the auction in June 2017.

Aumann scheduled a crew from the Company to go to the Residence

on or about May 8, 2017 to inventory and catalogue the items in the

Collection that were going to be sold at auction.  On or about May 2, 2017,

Fletcher canceled the May 8, 2017, trip.  Aumann said that Fletcher was

not ready to catalogue the items to be sold. <u>See</u> <u>Aumann Deposition</u>, at

131.

On or about June 8, 2017, Fletcher decided not to proceed with the

auction, and Fletcher contracted with a company Maddogs Performance to

sell eight antique automobiles in the Collection on consignment. <u>Defendant</u>

<u>Discovery Production</u>, Document 40, <u>Contract for Sale of Horseless</u>

<u>Carriages dated June 8, 2017 (Maddogs Contract)</u>.   Fletcher told Mark

Miklos of Maddogs Performance to deal with Aumann about the sale.

Miklos telephoned Aumann.  Fletcher was with Miklos when he made the

call.  Miklos informed Aumann that he had bought Fletcher's antique

automobiles and the auction was off.  According to Aumann, Fletcher got

on the phone and confirmed that he canceled the auction.   Fletcher

Deposition, at 85-86, 93-95; Aumann Deposition, at 135-37.  According to

Aumann, Fletcher told him that he sold the automobiles for $1,200,000.00.

Aumann Deposition, at 146.  The prices listed on the Maddogs Contract

total $1,063,000.00.[2]   The Maddogs Contract further stated:

> These prices are not negotiable and maddogs performance will
> satisfy aumann auctions, relating to the sale of these cars only
> for the price sold which maddogs performance will negotiate
> with aumann auctions regardless of price.  These are Conrad
> Fletcher's wishes.

Maddogs Contract.

Shortly after the June 8, 2017 telephone conversation between

Miklos and Aumann, Aumann spoke to Sullivan by telephone.  Sullivan

testified that he "understood that he [Aumann] had a contract with him

[Fletcher]."  Sullivan Deposition, at 59.

---

[2] The Maddogs Contract lists seven antique automobiles with a total price of $1,015,000.00.  Then, below, the total price for the seven automobiles, the Maddogs Contract lists an eighth automobile, ad 1935 Ford Phaeton with a "value ($48,000)."  The $,1063,000.00 listed above is the sum total of $1,015,000 and $48,000.

Maddogs Performance ultimately did not sell any of Fletcher's automobiles in the Collection on consignment.  Fletcher Deposition, at 81-82.  The automobiles were returned to Fletcher.  In October 2017, Fletcher donated a 1915 Pierce Arrow automobile and a 1909 Packard to a museum.  Fletcher Deposition, at 82-83; Defendant Discovery Production, Documents 29 and 31, Deeds of Gift to the Pierce-Arrow Foundation, Inc. dated October 4, 2017.[3]

## ANALYSIS

Fletcher moves for summary judgment asserting there was no enforceable contract.  At summary judgment, Fletcher must present evidence that demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The Court must consider the evidence presented in the light most favorable to the Plaintiff, the Company.  Any doubt as to the existence of a genuine issue for trial must be resolved against Fletcher.    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Once Fletcher has met his burden, the Company must present evidence to show that issues of fact remain with respect to an issue essential to the Company's case, and on which the Company will bear the burden of proof at trial.  Celotex Corp. v. Catrett,

---

[3] The Deed of Gift identifies the Pierce Arrow as a 1916 Pierce Arrow automobile.

477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986).  In this case, issues of fact preclude summary

judgment.

The Company alleges a claim for breach of contract.  According to

the Company, Fletcher breached the Online Auction Contract when he

canceled the auction on June 8, 2017.  Fletcher disputes that any contract

existed between him and the Company.  The parties agree that Illinois law

applies.  See Motion, at 12-13 n. 1; Response, at 9.

> The elements of a breach of contract claim in Illinois are:
>
> (1) offer and acceptance, (2) consideration, (3) definite and
> certain terms, (4) performance by the plaintiff of all required
> conditions, (5) breach, and (6) damages....
>
> … No contract exists under Illinois law, and, indeed, under
> principles of general law, if the agreement lacks definite and
> certain terms; nor is a contract formed by an offer that itself
> lacks definite and certain material terms and does not require
> such terms to be supplied by an acceptance.

Association Ben. Services v. Caremark RX, Inc., 493 F.3d 841, 849 (7th Cir.

2007); see also Haslund v. Simon Property Group, Inc., 378 F.3d 653, 655

(7th Cir. 2004).  The acceptance of an offer also must not change any

material term of the offer.  If the offeree includes new or different material

terms in his response, then the response is a counteroffer and not an

acceptance, and no contract exists unless and until the offeror accepts the

counteroffer.  See Hubble v. O'Connor, 291 Ill.App.3d 974, 980, 684 N.E.2d
816, 821 (Ill. App. 1st Dist. 1997).

The issue of whether a contract existed between the parties is a
matter of law to be determined by the Court.  Association Ben. Services,
493 F.3d at 849.  The Court must look at the written document to determine
whether a contract exists.  If the terms of the written document are
unambiguous, then the Court cannot consider extrinsic evidence to
determine whether a contract exists and the meaning of its terms.  If,
however, the material terms of the written documents are ambiguous, then
the Court may be able to consider extrinsic evidence to determine whether
a contract exists.  See Quake Construction, Inc. v American Airlines, Inc.,
141 Ill.2d 281, 288-89, 565 N.E.2d 990, 994 (Ill. 1990).

With these principles in mind, the undisputed evidence establishes
that the parties did not enter into any contract when Aumann met with
Fletcher on March 30, 2017.  Reading the facts in the light most favorable
to the Company and accepting Aumann's version of the events at the
March 30, 2017 meeting as true: (1) Aumann inspected the Collection,
prepared the List, discussed the List in detail with Fletcher, and he and
Fletcher identified the items in the Collection that would be included in an
auction; (2) at the end of the March 30, 2017 meeting Fletcher told Aumann

that he wanted to think about it and would be in touch; and (3) Aumann

knew that Fletcher was talking to at least one other auctioneer.  This

evidence shows at best that Aumann made an offer on behalf of the

Company to auction certain identified items in the Collection, but Fletcher

did not accept at that time.  Fletcher told Aumann that he "wanted to think

about it."  Aumann Deposition, at 74.  Aumann also knew that Fletcher was

talking to another auctioneer.  Aumann Deposition, at 166.   Under

Aumann's version of events, there was no acceptance of an offer, and so,

no contract on March 30, 2017.

Several issues of fact, however, exists regarding whether the signed

Online Auction Contract was an enforceable contract.  An issue of fact

exists whether Fletcher made a counteroffer when he signed the Online

Auction Contract in May 2017.  According to Fletcher, he left the

"September __ 2017" portion of the Online Auction Contract blank and

included a note stating that he wanted the auction in June 2017.  According

to Aumann, the Online Auction Contract received from Fletcher was signed

by Fletcher and had the blank filled in to read "September 15 &16 2017."  If

Fletcher is correct, then he changed a material term and made a

counteroffer which the Company did not accept as to the date of the

auction.  As a result, there was no contract.  See Hubble, 684 N.E.2d at

821.  But, if Aumann is correct, Fletcher filled in the "15 & 16" as contemplated by the parties, signed the Online Auction Contract, and accepted the Company's offer as to the date of the Auction.  For purposes of the Motion only, the Court must accept Aumann's version of the events.  Thus, for purposes of the Motion, the Company has presented evidence, which if believed by the trier of fact at trial, establishes offer and acceptance when Fletcher signed and returned the Online Auction Contract.

Issues of fact also exist whether the parties' agreement has sufficiently definite and certain terms to be enforceable.  The language of the Online Auction Contract manifests an intent to form a contract.  The Online Auction Contract states that Fletcher "hereby grants to AUMANN AUCTIONS, INC. the exclusive right to market and sell at PUBLIC AUCTION the following described personal property: …."  The Online Auction Contract ends with the statement, "This is a legal and binding contract when signed by both SELLER(S) and AUCTIONEER or by an AGENT for either party.  All faxes and facsimiles are binding when signed by all parties."   This unambiguous language demonstrates that Fletcher and the Company intended to form a contract.  See Board of Education of Arbor Park School Dist. No. 145, Cook County v. Ballweber, 96 Ill.2d 520,

527, 451` N.E.2d 858, 861-62 (Ill. 1983) ("Where parties reduce their agreement to writing, there is a presumption that the writing expresses their mutual intentions, and this presumption does not yield unless evidence to the contrary is strong and convincing.").

The Online Auction Contract, however, contains an ambiguous description of the personal property to be sold at auction:  "Antique Automobile, Sign and Parts Collection."  This phrase may mean: (1) Fletcher's collection of automobiles, signs, and parts; or (2) one unidentified antique automobile, one unidentified sign, and a parts collection; or (3) something else.  See Motion, at 16-17, for other possible interpretations of this phrase.  Given the ambiguity, the Court may consider extrinsic evidence to determine whether the parties understood the phrase "Antique Automobile, Sign and Parts Collection," to be sufficiently definite and certain and so make the Online Auction Contract enforceable.  Quake Construction, Inc., 565 N.E.2d at 994; see also Haslund, 378 F.3d at 655.

Viewing the evidence in the light most favorable to the Company, Aumann and Fletcher talked for two hours on March 30, 2017 and identified the items in the Collection that the Company offered to sell at auction for Fletcher.  When viewed in this light, the fact finder could conclude that the parties understood "Antique Automobile, Sign and Parts Collection" to

mean the items that they agreed to sell at auction at the March 30, 2017 meeting.

The Maddogs Contract provides additional support for the inference that Fletcher understood which items in the Collection were included in the Online Auction Contract's phrase "Antique Automobile, Sign and Parts Collection."  The Maddogs Contract stated that Maddogs Performance would "satisfy aumann auctions, relating to the sale of these cars …."  A fact finder could conclude Fletcher understood the phrase "Antique Automobile, Sign and Parts Collection" in the Online Auction Contract to include the eight antique automobiles listed in the Maddogs Contract, and Maddogs agreed to satisfy the Company for its commissions on these sales.  This evidence supports the inference that Fletcher and the Company ascribed a definite and certain meaning to the term "Antique Automobile, Sign and Parts Collection."  In light of this evidence, issues of fact exist concerning whether the parties understood the phrase "Antique Automobile, Sign and Parts Collection" to have a meaning that was sufficiently definite and certain to be enforceable.  As such, summary judgment is not appropriate.

Fletcher argues that the Court cannot look to extrinsic evidence to determine if the terms of the agreement were sufficiently definite and

certain to constitute an enforceable contract.  Fletcher relies on Air Safety, Inc. v. Teachers Realty Corp., 185 Ill. 2d 457, 463-66, 706 N.E.2d 882, 885 (Ill. 1999), to support this proposition.  Unlike here, the written terms in Air Safety were not ambiguous.  In addition, the written contract documents in Air Safety contained an integration clause stating that the written documents were the entire agreement between the parties.  Id. at 885.  The Illinois Supreme Court specifically stated that its holding in Air Safety was limited to agreements with integration clauses.  Id. n.1; see also, Quake Construction, Inc., 565 N.E.2d at 994 (Illinois Supreme Court considered extrinsic evidence to determine if a contract existed).  The Online Auction Contract does not contain an integration clause.  The Air Safety decision, therefore, does not apply.

Fletcher also relies on cases that state that an agreement that is missing a crucial term is not enforceable and the Court "cannot supply the term in the name of interpretation."  Haslund, 378 F.3d at 655; see Academy Chicago Publishers v. Cheevers, 144 Ill.2d 24, 578 N.E.2d 981, 984 (Ill. 1991).  Here, the crucial term was not missing.  The crucial term "Antique Automobile, Sign and Parts Collection" was in the Online Auction Contract.  The term was ambiguous.  When a term is ambiguous, the Court may look to extrinsic evidence to determine if the parties understood the

term to have a definite and certain meaning.  See <u>Haslund</u>, 378 F.3d at 655 (Court could look to extrinsic evidence to determine whether an apparently ambiguous term promising the employee a one percent equity ownership interest in the employer was sufficiently definite to be an enforceable contract).  The conflicting evidence creates issues of fact regarding whether the parties understood the term "Antique Automobile, Sign and Parts Collection" to have a definite and certain meaning.  Summary judgment is not appropriate.

THEREFORE, IT IS ORDERED that Defendant Conrad Fletcher's Motion for Summary Judgment (d/e 53) is ALLOWED in part.  The Court finds pursuant to Fed. R. Civ. P. 56(g) that Plaintiff and Defendant did not enter into a contract on March 30, 2017 when Plaintiff's representative Kurt Aumann met with Defendant Conrad Fletcher.  The Motion is otherwise DENIED.

ENTER:   February 12, 2021

s/ *Tom Schanzle-Haskins*
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE